Good morning, Your Honor. May I please quote Richard Oryaki for Mr. Singh? And I appreciate the accommodations. Thank you. The issue in this case is whether or not substantial evidence supports the immigration judge's adverse credibility determination, as well as the BIA's affirmance of that determination. The BIA concluded that there were material discrepancies that were not explained. Quite frankly, the petitioner does not agree with that determination. The record does not support that, as a matter of fact. The record shows very clearly that the petitioner was never even given an opportunity to explain any perceived inconsistency. For example, one of the stated inconsistencies in the BIA decision is that Mr. Singh testified that he sheltered or provided accommodations to three members of his party sometime in December of 2000. And he indicated in his testimony that he did so for two or three days, whereas in his declaration attached to the I-589, he indicated that it was for two or three weeks. The record shows that he was never even asked about that discrepancy to clarify that. It is quite possibly a misstatement why he was testifying, but that was never clarified, and he was never given the opportunity to rectify any misunderstandings if that was the case. The BIA's decision said the respondent offered no plausible explanation for his discrepancy, and the question is how can he offer an explanation if he's not confronted with a discrepancy? The judge's decision in this case fails for several reasons. In his oral decision, he indicates that the petitioner, respondent in the immigration court, testified vaguely and non-responsively, yet he does not mention a single instance when the respondent or the petitioner was non-responsive. The immigration judge is supposed to provide cogent reasons for the grounds on which he bases his Agus credibility determination, and he did not do so in this case. The respondent's testimony was detailed when he was asked questions. He answered every question that he was asked. There were confusions, yes, but he provided answers to questions that he was asked. There was no instance where he was asked a question and he failed to answer. Therefore, the petitioner's position is that the immigration judge erred in his decision, and that decision should be overruled, the BIA as well. What are you asking us to do? Well, the BIA considered the determination about credibility. Therefore, their decision should be overruled. Well, if the main defect to which you have pointed is the lack of an opportunity to explain inconsistencies, wouldn't that require reopening of or new hearing to allow that kind of an explanation? Because where the issue is a due process issue, there has to be more process. I don't know if that's what Judge Pius' question is, but it's my question as to whether further evidence has to be taken. Under normal circumstances, I can see that as a logical step. However, the immigration judge knows full well the rulings of this court. The immigration judge knows what due process requires of him. He knows that he's supposed to confront a witness with any potential discrepancies within the testimony and or application, yet he didn't do any of this. Well, I know that, but you seem to be saying that as a punitive measure, we should just, you know, allow your client to win outright. But if the issue is lack of process, why wouldn't we return the case for more process? Two reasons for that. First of all, the alleged discrepancy, whether or not the petitioner said, meant that he provided accommodations for two or three days or two or three weeks. Well, there actually are a number of discrepancies in the record. It just happens that the I.J. didn't list them and didn't ask about them. But anyway, I understand your answer. Well, what I was going to say is... I have a few questions. Are you familiar with Soto Alarque? No, Your Honor. That's a case in which in 2009, in which we discussed what's the appropriate remedy on remand. And we appeared to say that in cases of this type, that were the questions whether there can be an explanation for the inconsistencies. That in that type of case, it should be remanded so that he can be given, as Gregor said, can be given the opportunity to explain the inconsistencies. Sometimes we remand and order him deemed credible. And sometimes we remand and give the petitioner an opportunity to explain the reasons. Soto Alarque appears to say that in this type of case, it's the second type of remand that is appropriate. The reason I was going to give a minute ago is simply this. You have to look beyond just the discrepancy. You have to look at whether or not it relates to the applicant's, or the petitioner's in this case, fear of persecution. For example, the issue about how long he provided shelter to members of his party has no bearing whatsoever on the police arresting him and detaining him, beating him up and breaking his finger. Whether he hosted them for a day, two days, two weeks, makes no difference. The fact is he hosted members of his party, and therefore he was arrested, detained, and beaten up. Well, the question is if somebody says, I did host somebody, members of the party, and I did it in 1990, and then he testifies later, I did it in the year 2000, the BIA may consider that it shed some doubt about whether he did it at all. And if he can explain why he said once in 1990 that that was a mistake in translation or he misunderstood, then the story becomes credible. But when there's an inconsistency regarding the story, they may doubt the entire story. So, you know, also I'm not really suggesting that one view or the other of the law is correct. I'm only suggesting that it is the law in this circuit. Understandable. Well, I think you may want to save your last two minutes for rebuttal. Very well. I will do that. Thank you. Good morning. May it please the Court. My name is James Grimes. I'm here on behalf of the Attorney General. And I think I'd like to start off by suggesting that perhaps the opportunity to clarify a rule is somewhat more nuanced than my opponent has suggested. And I'd like to start with this Court's decision in Powell, which is cited in our brief at page 14. In Powell, this Court said, distinguished this Court's earlier decision in Campos Sanchez on the basis that the immigration judge in Powell did find Powell incredible, and this Court said that was to lack credibility. That was sufficient enough to provide him with notice. In contrast to the case in Campos Sanchez, where the BIA first entered its own independent adverse credibility determination, which was contrary to that reached by the IJ. Well, the IJ here pointed to many, many inconsistencies, a whole laundry list of inconsistencies. And from my reading of the transcript, it appears that there was an opportunity to explain only one of the many. And the IJ basically asked almost no questions of clarification or explanation or otherwise. Why doesn't that fall within the usual rule that he didn't have that opportunity to consider explaining these different things? I think I have two responses to Your Honor's question. First off, I respectfully disagree that the IJ didn't ask any questions about the discrepancies. He asked about one of the discrepancies, but he pointed to many. At 158, he asked what was the date of the Vaisakhi Festival. At 165, he asked what does same as before mean when Mr. Singh said he was punished the same as before. At 185, he asked if he had been arrested in Calcutta. Mr. Singh had said in his declaration that he was arrested. In his testimony, he said that he was not arrested. At 175- But that's not asking for an explanation. What the IJ should have done after that is to say, well, that answer about Calcutta calls into question, you know, your application because there you said this and here you said that, and can't you explain that to me? It isn't the explanation that was asked for. If I could, and Your Honor, Mr. Cheston, he created the-I'll try and answer both of these. I'm sorry. Just forget what I was going to say. I think Judge Graves covered- If I could. In Powell, this Court said that if the immigration judge issues the adverse credibility determination, that's sufficient. Now, I'll grant that it is more nuanced than that. Petitioner has cited the case of He in which there was an interpretation problem, and that created the discrepancy. Also, the immigration judge didn't find that the person lacked credibility. In Guo, there was unclear testimony, and so the person didn't have the opportunity to address that. But in Powell, this Court said that if the immigration judge issues the adverse credibility determination, that itself is sufficient. Here, I think if you go through and look at what Petitioner's counsel was doing, he was certainly aware of the discrepancies as he tried to lead Petitioner out of the number of the problems that his testimony created for him. You can see the leading questions that he asked in 155, 157, and especially at 161 when he realized that Petitioner was giving a different version of events about Officer Sharma. In fact, if you take his declaration and you hold it up against his testimony, they don't match up. That's what this case comes down to. You look at his declaration about Officer Sharma, he said Officer Sharma was the reason that he was fired, because he was visiting his relative who was Singh's boss. His declaration was at 244 and 245. Yet in his testimony, Officer Sharma is irrelevant. The frustrating part of cases like this is that it doesn't necessarily mean that the person has to be believed. It just means that they have to have an opportunity to put their best foot forward by explaining things that the immigration judge finds problematic in terms of credibility or otherwise, to sort of alert the person and say, hey, unless you explain this, I'm going to find against you. Now, that may be right or wrong, but that's what I think our cases require. And I understand Your Honor's point. We can only take the court's cases as we find them, and we start with the Powell decision that says that's okay, and then afterwards you have other decisions that sort of flesh that out in cases where the testimony is unclear, in cases where there's obviously an interpretation problem, or the agency is strained to reach a decision that you wouldn't have expected based upon what was presented. But here you have a straight adverse credibility determination reached by the immigration judge. The petitioner was certainly aware of it. He argued about it before the board. But that doesn't help with the issue. It's just to take for the moment the premise that it's right that when, and there may be a good reason for this, when you read this transcript, you wonder to what extent there's a translation problem or an understanding problem. And one of the key points is it's clear that the transcript doesn't really reflect what the subject is. Now, whether that's the fault of the petitioner not understanding, the translator not understanding, it's clear there are problems in these cases. So for whatever reason, the rule seems to be that you point out to the petitioner, look, here earlier you said this, now you said this, is there an explanation? Assuming that's the rule, it doesn't help that the I.J. says at the end you have a credibility problem. I agree with you, Your Honor. If that's the rule, then the I.J. asked about the problem with the passport and the entry at pages 174 and 175. And if that's what the rule is and Powell doesn't say what, as I believe I've read it, then Your Honor is correct. And I think under Sotomayor, as Your Honor suggested, the appropriate course would be to give him the opportunity to try and explain things. But our position is the law in this circuit is not that. The I.J. has to do that outside of these instances discussed here in Guo where you have an interpretation problem. And I think here the only interpretation problem related to the idiomatic use of discussion of the bribery, he hasn't, Mr. Singh hasn't suggested that there were other interpretation problems. And there are several major problems. As I said, with respect to Officer Sharma, his testimony was different, diametrically, diametrically is not the right word, but very different from his declaration because he said that Officer Sharma was the reason he was fired in his declaration. But if you get to his testimony, Officer Sharma is not the reason he was fired. At page 160, he said the reason he was fired was because party members were visiting him at work. And he actually denied that there was a connection between Officer Sharma and his firing. And his counsel did try to ask him about that. And he said, you know, did you, was it possible you actually saw him in June, which is what was said in his declaration. So his counsel was aware of the problem. But what his response to that was, well, yeah, maybe I saw him in June 1999 because I started work as a commission agent in 2001. But he didn't start work as a commission agent in 2001. So I don't know if that answers the problem. Of course, Baisakhi Day is always in April, so he couldn't have seen him in June at a Baisakhi Day festival. There's the other discrepancy I referred to about his arrest. In his declaration, he said he was arrested in Calcutta and that police came to his house and took he and two party members, took them to jail. His testimony was twice that he wasn't arrested. Once in response to the immigration judge's question. But even there, he said that he went to the police station and he was quite, you know, what did the word arrest mean to him? There could be an explanation. I suppose that. Maybe when he was given an opportunity, he couldn't have answered it. And then the findings, you know, proper. But what do you mean? He said he went to the station. And at one point he said they came to your house and took you to the station. How do you explain that? Do you have any explanation for that inconsistency? I mean, you're right. It is an inconsistency. But whether the word arrest meant the same thing to him that it means to us, he may not have an answer. But, you know, if the law is, it says, for instance, in Soto Alarte, which is 2009, we said because the IJ did not offer Soto Alarte an opportunity to explain the inconsistencies on which he later relied in finding him not credible and did not address the explanation he gave for those. The IJ's adverse credibility finding, which is subsequently adopted by the BIA, was not supported by substantial evidence. We may have some inconsistencies in our cases, too. Well, I think that that's an important point that the Court may want to explore. I mean, I can only take the cases as they come to me, as I said, and Powell said. All right, so I'm trying to give you Soto Alarte. I'm coming to you. I understand what Soto Alarte says. And I think, as Your Honor quoted the language in Soto Alarte, was that there actually was an explanation that was offered. Here he was specifically asked, were you arrested in Calcutta? The immigration judge asked him that at 185. After he testified, I think, at 167 and 168. Well, you certainly know the record. I'll say that. That's certainly, it helps. It does. And there's one other discrepancy, before my time runs out, I'd like to point out, and that has to do with the alleged abuse he received after the December 2000 arrest. His declaration, they used a roller, which he said caused excruciating pain. His testimony simply was they did the same as before. Well, the same as before could only have been when his hand was broken, when he didn't talk about a roller at all. So he's discrepant as to that significant event. In any event, we would ask that you deny the petition for the reasons we've discussed this morning and for the reasons discussed in our brief. Thank you. Thank you. Thank you. I'll just quickly address one or two of these alleged inconsistencies. Respondent was at, petitioner rather, was asked on page 167 if he was, if he had any interactions with the police in Calcutta. And he answered yes. That was it. When he was later on asked if he was arrested by the police, he said no, I was called to the police station. Now, that could mean an arrest to him or to somebody preparing his application. We don't know that because he was never given an opportunity to explain that. There are a few other alleged inconsistencies that were never explored either. For example, the respondent of the Judge Graber has already said that all except one of the cases, there was no effort to clarify the inconsistency. So if you want to go through them again and say you agree with Judge Graber, that's your privilege, but you also don't have to use all your two minutes. Right. The point is, substantial evidence in this case does not support the immigration judge's decision. That is my belief. Thank you, counsel. Thank you both very much. It was very helpful.
judges: Reinhardt, Graber, Paez